IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHIUNG-FANG LIANG                                                    PLAINTIFF

v.                          CASE NO. 4:17-CV-00135 BSM

DAN RAHN, et al.                                                   DEFENDANTS

## ORDER

Defendants' second motion to dismiss [Doc. No. 24] is granted in part and denied in part, and their first motion to dismiss [Doc. No. 16] is denied as moot.

### I.    BACKGROUND

Plaintiff Chiung-Fang Liang began working for the University of Arkansas for Medical Sciences ("UAMS") as a nurse in January 2014.  In November 2016, Liang's supervisor gave her a choice: face termination or resign.  This threat, Liang alleges, was another link in a chain of discriminatory treatment she faced because of her race, sex, and national origin.

UAMS hired Liang to work weekdays in UAMS's neuroscience unit.  Am. Compl. ¶¶ 4–5, Doc. No. 23.  Soon after beginning work, however, she was required to work weekends, eventually working every weekend for two consecutive months in 2014.  After voicing concerns about her schedule, Liang's immediate supervisor cautioned Liang that she could lose her job.  *Id.* ¶ 5.  In fear of losing her job, Liang accepted the schedule.

To escape the work schedule, Liang applied to work in UAMS's stem cell transplant unit.  She began working in the unit but later complained to supervisors about discrimination.

For example, Liang was assigned to discharge (a time consuming and tedious task) more patients than other nurses. Because of this, her peers gave her the nickname "discharge queen." During this time, she was also marked as someone "difficult to work with" because she refused to administer medications in violation of UAMS procedures.

Liang was also mocked and bullied by employees in front of supervisors. On one occasion in July 2016, Richard Alcala, another UAMS employee, told Liang that "if she couldn't speak English that she should go back to where she came from" and to "tell [him] the numbers in English." *Id.* ¶ 8. These comments were broadcast over an intercom system and Liang's supervisors, Susan Heath and Judy Osborn, could overhear the conversation.

Heath and Osborn pushed Liang to file a complaint against Alcala. After filing a complaint, Liang never received documentation or notification of an investigation. Within two days, however, Liang began feeling retaliated against by those loyal to Alcala. For example, Megan Thomas reneged on promises that resulted in Liang spending more time completing tasks, and Christina Ketchum reported Liang for poor time management. *Id.* ¶¶ 10–11. Finally, approximately three months after filing the complaint, Liang was accused of having another employee clock in for her, which Liang alleges is false, misleading, and another example of the hostile environment she faced. *Id.* ¶ 12.

Although her complaint does not deny that someone else clocked in for her, Liang states that it was not another employee, but her minor daughter, who clocked in for her. Liang's daughter was a visiting scholar in the UAMS bio-statistics department and on the day

in question, she carried several of Liang's bags into the building from Liang's car. At one point, when Liang briefly returned to her car, her daughter was ushered into an elevator. Her daughter arrived at Liang's floor and, in following the example of everyone else on the elevator, apparently swiped Liang's employee badge that was in one of the bags. After Liang arrived on another elevator, she was unable to clock into the system. *Id.* ¶ 12. Liang prepared a statement to Heath regarding the time clock issue, and Heath followed up by notifying Liang that she had to resign or would be fired.

UAMS's administrative guide provides progressive discipline procedures for time clock violations and immediate dismissal is warranted for gross misconduct. The guide's definition of gross misconduct does not explicitly include the actions taken by Liang and her daughter. Liang, however, received no oral or written warning and, apparently, this one instance was enough to constitute termination, as Heath told Liang that she would never have a good nursing job if fired from UAMS. When faced with the demand that she either quit or be fired, Liang signed a letter of resignation. *Id.* ¶ 13. Even though Liang resigned, Alcala, Ketchum, and Walker told other employees that Liang had been fired because Liang's nursing skills were subpar.

It is notable that Alcala had also been the subject of discipline at UAMS, though he received much less severe treatment than Liang. For example, on July 26, 2016, Alacala received a "written warning" after eight unexcused absences, which followed a "verbal warning" for six unapproved absences just the month prior. *Id.* ¶ 21; Doc. No. 23-1 at 9–10.

Ironically, on that same day in July 2016, UAMS pressured Liang to resign for a single instance of a time discrepancy that resulted from Liang's minor daughter swiping an employee badge without Liang's knowledge.

Liang brought suit against Dan Rahn (official capacity), Jeff Risinger (official capacity), Audrey Bradley (official capacity), Richard Alcala (official and personal capacity), Christina Kethcum (official and personal capacity), Tamekia Walker (official and personal capacity), and the Board of Trustees for the University of Arkansas. She alleges First Amendment, Equal Protection, Due Process, section 1981 and 1983 claims, and state law defamation against all defendants. She brings Title VII claims for discrimination based on gender, race, and national origin; a Title VII retaliation claim; and claims for the same under the Arkansas Civil Rights Act against the Board of Trustees. *Id.* ¶ 22.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiff fails to state a claim upon which relief may be granted. To meet the 12(b)(6) standard, a complaint must allege sufficient facts to entitle the plaintiff to the relief sought. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Although detailed factual allegations are not required, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Id.* In ruling on a 12(b)(6) motion to dismiss, materials embraced by the pleadings, as well as exhibits attached to the pleadings and matters of public record, may all be considered. *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).

## III.   DISCUSSION

### A.   Sovereign Immunity

Defendants' motion with respect to sovereign immunity is granted in part and denied

in part.  The claims brought against the Board of Trustees and individual defendants in their

official capacities for section 1983 violations and state law claims are dismissed because of

sovereign immunity.

Sovereign immunity bars private citizens from suing states for damages in federal

court. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751–52 (2002).  This

immunity also shields "arms of the State" from suit, which includes state universities such

as the University of Arkansas.  *N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189, 193

(2006); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 622 (8th Cir. 2001); *Humenansky v. Regents*

*of the Univ. of. Minn.*, 152 F.3d 822, 823–24 (8th Cir. 1998).  This immunity remains in

place unless Congress abrogates it or a state waives it.  *See Coll. Sav. Bank v. Fla. Prepaid*

*Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Doe v. Nebraska*, 345 F.3d

593, 598 (8th Cir. 2003); *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 622 (8th Cir. 2001).

Liang's suit triggers sovereign immunity for two reasons.  First, Liang's suit is

properly brought against the Board of Trustees because Arkansas state law designates the

board as the entity capable of being sued.  *See Greenwood v. Ross*, 778 F.2d 448, 449 n.1

(8th Cir. 1985) ("Arkansas state law designates the Board of Trustees of the University of

Arkansas as the entity capable of being sued.").  The Board of Trustees (*i.e.*, the University

of Arkansas) is an instrumentality of the state of Arkansas, and thus enjoys the state's sovereign immunity. *See, e.g., Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 622 (8th Cir. 2001) ("The University of Arkansas has been recognized to have Eleventh Amendment immunity."). Similarly, Liang's suit against individual UAMS employees in their official capacities is another way of asserting a claim against UAMS, and thus another way of asserting a claim against the state itself. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself . . . The real party in interest is the government entity, not the named official.") (citations omitted). Therefore, Liang's claims against the Board of Trustees and the individual defendants in their official capacities are subject to sovereign immunity scrutiny.

Congress has not abrogated and the state of Arkansas has not waived immunity from section 1983 claims. *See Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) ("[I]t is well settled that the Eleventh Amendment bars [plaintiff's] § 1983 claims against the State of Arkansas and its [agenies.]"); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) ("individual defendants acting in their official capacities are likewise barred, either by the Eleventh Amendment or because in these capacities they are not 'persons' for 1983 purposes."). The bar on section 1983 claims also affects Liang's section 1981 claim because section 1981 claims against state defendants are brought under section 1983. *Lockridge v. Bd. of Trs. Univ. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003) (en banc).

Liang's state law claims meet a similar fate, though her Title VII claim survives. Sovereign immunity bars state claims against the Board of Trustees and individual defendants in their official capacities. *See, e.g., Harrison v. Univ. of Ark.*, Case No. 4:06-CV-00904 WRW, 2008 U.S. Dist. LEXIS 50342, at *12 (E.D. Ark. July 1, 2008) (dismissing ACRA and tort of outrage claims).

This bar does not affect Liang's Title VII claims because "Title VII validly abrogated the States' Eleventh Amendment immunity." *Maitland v. Univ. of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001). Moreover, this bar does not affect claims for injunctive relief. "[S]tate officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment[.]" *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).

Although defendants argue that some of the individual defendants cannot provide the relief Liang seeks, this information is outside the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6) . . . the court generally must ignore materials outside the pleadings[.]") (quotation omitted). The complaint alleges the individual defendants are employees. *See, e.g.,* Am. Compl. ¶ 9. Accepting those allegations as true, those individuals can provide the relief Liang requests.

Accordingly, Liang's claims for damages under sections 1981 and 1983, the ACRA, and for defamation against the Board of Directors and the individual defendants in the

official capacities are dismissed with prejudice.  The motion to dismiss, however, is denied as to Liang's official capacity claims for injunctive relief.

B.        Discrimination and Retaliation

The motion to dismiss Liang's discrimination claim based on sex, race, and national origin, and to dismiss her retaliation claim is denied.

Defendants dispute Liang's claims and justify Liang's separation from UAMS.  This is the wrong standard for a motion to dismiss.  Liang is not required to prove her case or establish a prima facie case at the motion to dismiss stage.  She need only allege facts that make her claims facially plausible.  *See Blazek v. United States Cellular Corp.*, 937 F. Supp. 2d 1003, 1013 (N.D. Iowa 2011) ("District courts in this circuit agree that this pleading standard does *not* require an employment discrimination plaintiff to make out or plead facts related to each element of a *prima facie* case of discrimination in his or her complaint, but the claim must be facially plausible and the complaint must give fair notice to the defendant of the basis for the claim."); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This court has never indicated that the requirements for establishing a prima facie case under *McDonnel Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Jones v. City of St. Louis*, 555 Fed. Appx. 641, 641 (8th Cir. 2014) (citing *Swierkiewicz* for the proposition that "prima facie model is evidentiary standard, not pleading requirement"); *Wilson v. Ark. Dep't of Human Srvs.*, 850 F.3d 368, 372 (8th Cir. 2017) ("Under the 'simplified notice pleading standard] that governs *McDonell*

*Douglas* [discrimination and] retaliation claims, summary judgment motions – not motions to dismiss – should dispose of most unmeritorious claims.").

An employment discrimination claim requires allegations that (1) Liang is a member of a protected class; (2) she was qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Liang's discrimination charges under other statutes are analyzed in a similar manner. *See Moody v. Vozel*, 771 F.3d 1093, 1097 (8th Cir. 2014) (involving Title VII and § 1983 claims); *Schaffhauser v. UPS*, 794 F.3d 899, 902 (8th Cir. 2015) (Title VII and ACRA claims).

Defendants' motion to dismiss the discrimination claim is denied because Liang has alleged employment discrimination. Taking her complaint and exhibits as a whole, Liang alleges she is an Asian woman of Taiwanese descent, and race, sex, and national origin are all protected classes. 42 U.S.C. § 2000e-2(a). Defendants assume Liang was qualified for her job. Br. Supp. 5. Liang suffered adverse action when she was given the choice to resign or face termination. *See, e.g., Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1226 (D.N.M. 2004) (finding dispute of material fact on summary judgment when employee was forced to resign when faced with threat of termination). This choice was in close proximity to the treatment from others in her office directed toward her race, sex, and national origin, which her supervisors were aware of but apparently did nothing about. Finally, even though

Liang resigned, employees were apparently permitted to spread information that Liang had been fired for subpar performance, which certainly suggests Alcala's discriminatory statements about Liang's skills were actually considered during the termination meeting. Taken together, this is sufficient to state a claim of discrimination.

Liang also alleged a retaliation claim. A retaliation claim under Title VII involves (1) engaging in statutorily protected conduct; (2) suffering an adverse employment action; and (3) a causal connection between the two. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). Similarly, First Amendment retaliation requires constitutionally protected conduct and that protected conduct serving as a substantial or motivating factor in the defendant's adverse action. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 865 (8th Cir. 2009); *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016) ("We analyze First Amendment and ARA retaliation claims under the same framework as claims of retaliation under Title VII."). Liang filed multiple complaints about how others treated her, and she was forced to resign. The proximity of Liang's complaints against Alcala, Liang's forced resignation, and the fact that Liang's complaint apparently fell on deaf ears is sufficient to state a retaliation claim.

C.   Due Process

Defendants' motion to dismiss Liang's due process claim is denied because Liang has sufficiently alleged that she had an expectation in the continuation of her employment.

A due process property interest arose when defendants deprived Liang of a "property

right in continued employment" without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 2.0, 538 (1985).   State law and employment contracts affect the extent of this interest. *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). If Liang had a protected interest, she is entitled to an opportunity to be heard at "at a meaningful time and in a meaningful manner," which is a flexible standard depending on the particular circumstances. *Id.* at 899–900.

Defendants are correct that Arkansas is an at-will employment state, *Lynn v. Wal-Mart Stores, Inc.*, 280 S.W.3d 574, 579 (Ark. 2008), but Arkansas also recognizes an exception when employment manuals and agreements provide employment expectations, *Hice v. City of Fort Smith*, 58 S.W.3d 870, 872 (Ark. 2001).   Liang alleged that UAMS's employee handbook established protocols for termination and that UAMS did not follow them. Am. Compl. ¶¶ 19–20.   The cases addressing whether UAMS's handbook modified the at-will nature of employment had the benefit of reviewing the handbook at the summary judgment stage. *See, e.g., Drye v. Univ. of Ark. for Med. Scis.,* Case No. 4:09-CV-00922 JLH, 2011 U.S. Dist. LEXIS 109247, at *13–14 (E.D. Ark. Sep. 23, 2011); *Floyd-Gaimon v. Univ. of Ark. for Med. Scis. ex rel. Bd. of Trs.*, Case No. 4:10-CV-00655 JMM, 2012 U.S. Dist. LEXIS 35540, at *17–19 (E.D. Ark. Mar. 16, 2012).   At this point in the litigation, however, Liang has alleged UAMS created an expectation for employment, and that her interest in employment was impermissibly severed.

    D.    <u>Defamation</u>

Defendants' motion to dismiss the defamation claim is denied because Liang pleaded a plausible claim.

"A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation." *Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 402 (Ark. 2002). Liang must allege that (1) the defamatory nature of a statement of fact; (2) the statement's identification of or reference to her; (3) publication of that statement by the defendant; (4) defendant's fault in publication; (5) the statement was false; and (6) damages. *Id.* Notably, Liang must allege she suffered actual damage, as Arkansas no longer recognizes defamation per se's presumed damages. *Dodson v. Allstate Ins. Co.*, 47 S.W.3d 866, 875 (Ark. 2001).

Liang alleged that Alcala, Ketchum, and Walker made statements that Liang was (1) fired and (2) fired because of Liang's subpar skills. Am. Compl. ¶ 21. Accepting Liang's allegations as true, these statements directly referenced Liang, they were published to others, and they are false because Liang resigned (not fired) because of allegations of misusing the time clock (not because of Liang's skills). *See Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 402 (Ark. 2002). Finally, Laing alleged damages when she lost wages as a result of being unable unable to secure employment and continue in her career. Am. Compl. ¶¶ 37-39.

F.      Statutory Immunity

Defendants argument that the state law claims against the individual defendants are barred by Arkansas's statutory immunity is denied.

Liang alleged state law defamation against Alcala, Ketchum, and Walker in their

individual capacities. Arkansas's statutory immunity protects state employees from civil

liability for non-malicious acts occurring within the course of their employment. Ark. Code

Ann. § 19-10-305(a); *Early v. Crockett*, 436 S.W.3d 141, 150 (Ark. 2014). Liang escapes

this immunity bar, however, because she alleged the defendants "*maliciously* acted to ruin

[Liang's] reputation." Am. Compl. ¶ 29 (emphasis added). She substantiated these

allegation by describing how UAMS employees spread false information about her

separation from UAMS, which suggests the employees meant to do her harm, especially in

light of their similar conduct in retaliating against her and making comments about her

background. Taken together, this suggests defendants had "an intent and disposition to do

a wrongful act [that is] greatly injurious to [Liang]" to justify malice. *See Fuqua v. Flowers*,

20 S.W.3d 388, 391 (Ark. 2000).

G.    Punitive Damages

Liang appears to request punitive damages for all claims. Defendants' motion to

dismiss claims for punitive damages is granted in part and denied in part. The motion is

granted with respect to the Title VII claim against the BOT because states are exempt from

punitive damages. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive

damages under this section against a respondent (*other than a government, government*

*agency or political subdivision*) . . . ."). The motion is denied with respect to the section

1983 claims against the individual defendants, however, because punitive damages are

available in such claims. *Schaub v. VonWald*, 638 F.3d 905, 923 (8th Cir. 2011). Punitive

damages are intended to punish against "outrageous, intentional, or malicious conduct, and

deter similar extreme conduct in the future." *Id.* Liang alleged the individual defendants

acted intentionally, and when viewed in light of their persistent discriminatory treatment,

certainly creates an inference of an "evil motive or intent." Id.

## IV.  CONCLUSION

For the reasons set forth above, defendants' second motion to dismiss [Doc. No. 24]

is granted in part and denied in part, and their first motion to dismiss [Doc. No. 16] is denied

as moot. Liang's claims for money damages against the Board of Trustees and the individual

defendants in their official capacities under section 1983, section 1981, and Arkansas state

law are dismissed with prejudice. Liang's claim for punitive damages against the Board of

Trustees under Title VII is also dismissed with prejudice. Defendants' motion to dismiss is

denied in all other respects.

IT IS SO ORDERED this 27th of July 2017.


_____
UNITED STATES DISTRICT JUDGE